I'm going to attempt to revert two minutes from about 2 o'clock. In Torres v. Prenti, this court held that evidence that the defendant believes that his attorney is part of a greater conspiracy against him constitutes evidence that he may no longer be able to rationally assist in his defense. In this case, there was abundant evidence that Mr. Moss endorsed conspiratorial views about his attorney, about the prosecutor, and about the court itself. He accused his third CJA lawyer of hiding evidence in favor of his case. He claimed that his third CJA lawyer told him that he was getting paid to accuse him and not to defend him. He believed that his fourth CJA lawyer was refusing to show him evidence in his file that had been gathered by his second CJA lawyer. He believed that both Magistrate Judge Ferraro and District Judge Collins had scolded the prosecutor for continuing to prosecute this case and had asked him why he had not been given a new visa. And when confronted with a transcript of the hearing by which this conversation allegedly took place, he claimed that the transcript was false. And as all of this was happening, the district court did nothing to inquire about Mr. Moss's competency, did not ask his lawyer if he had concerns about competency, did not order a competency exam. Counsel, the surprising thing, the evidence that you pointed to is indeed very, very interesting. But the curious thing is that four lawyers, a district judge, a prosecutor, even the prosecutor would have an incentive to say, we have some concerns about this and we don't want this being upset on appeal. So everybody was in the courtroom. And so now you're asking us to take this on a cold record. I assume this is also your cold record. But we're asking all of us to take this on a cold record and second-guess everybody who ever actually dealt with it, including the district judge who sees it on the scene. And repeatedly has had to talk to him. The guy seems, you know, he's quite coherent in the transcripts. We just don't buy his story about the U visa. What do we do with this? And what in our cases will tell us that we can second-guess everybody else's judgment about this guy's competency? Your Honor, the fact that no one raised this is the reason that we are on plain error review. Had one of his lawyers said, Your Honor, I have competency concerns, and had the judge not held a hearing, we would not be on plain error review. So I understand that this particular posture does put us into the more stringent plain error standard. I respectfully disagree that all parties have incentive to raise competency when there appear to be competency issues. I think certainly there are concerns about preserving issues on appeal. But as the Court is aware, there is and has for some time been a tremendous backlog of restoration proceedings at the FMC Butner. By the time Mr. Moss begins engaging in these lengthy and obviously erroneous colloquies with the Court, he's been in custody for 16 months. His after-trial guidelines are 27 to 33 months. Sending him to competency restoration, there are at least 6 to 12-month delays in even getting to the facility. And once he's there, it's a 90-day restoration period that frequently gets extended because of lack of resources. So we are talking about somebody who is effectively time served. And so there's also an incentive to just get this case over, both because no one wants to prolong the incarceration of Mr. Moss, but also because sending him to Butner takes away a bed space from somebody else who may be in a more serious situation. So I think that there are multiple real-world incentives working on people. And I think that defense counsel does, in fact, does not use the word competency, I concede, but does, in fact, raise urgent concerns with the Court that Mr. Moss seems to not understand what he's being told in meetings with counsel, that he is endorsing these conspiratorial views. And defense counsel is actually asking for special audiences with the Court to express these views, asks for an unscheduled audience the day before trial at the final pretrial conference, asks permission to address the Court regarding these concerns, which the judge clearly understands to be concerns related to his inability to process information. His lawyer says— It's really an inability to process information or a worldview that doesn't have a better alternative. I mean, what alternative is there for him to believe? This is the basis he thinks that he's justified in reentering and remaining in the United States. He has no discernible other grounds for that result. And perfectly sane people. I mean, there are certain things my mother believed because it made her life easier, even though they were, to the rest of the family, demonstrably untrue. So I'm not sure that the fact that somebody clings to a particular faulty view of the world as to some subject suggests that person is not competent generally. Your Honor, this Court's precedent suggests that when that particular false view relates to the Court proceedings, to his relationship with his counsel, and to the facts of his case, that that is evidence of incompetency. How do you reconcile that? We have the cases about sovereign citizens, right, who have all kinds of wacky beliefs. Wacky was the word we used in the Neal case. About, you know, like, the Court doesn't have jurisdiction over me because there's a fringe on the flag, so we're an admiralty court. None of that makes a person incompetent in the sense of the cases, right? Yes, Your Honor. How is this different? We agree. I think the difference here is that it's not just that Mr. Moss persists in saying, well, this U visa issue, this kidnapping issue, those are defenses to my case, and even when you tell me, the judge, tell me that it's not, I'm going to persist in arguing that it is, which is more the Neal and the sovereign citizen lines of cases. Instead, he believes that other judges have told him that this is true. Other judges in this case. And when he is shown transcripts, he says the transcript is wrong. I want to hear the recording. The sovereign citizen, this does not appear to be somebody who is just stubborn. This appears to be somebody who actually has false recollections, of which he cannot be dissuaded, about what litigants in this case, judges, the prosecutor's office, have said to him. But at least some points, I mean, there's a lot in the transcript, but there are at least some points where the district court said to him something to the effect of, you know, I think you understand me. I think you just don't agree with the ruling. So to a degree, wasn't that what was going on? I don't believe so, Your Honor. Certainly, there were times when that happened. There were rulings that he simply disagreed with. But there was also abundant evidence of him just endorsing things that were obviously false. Appearing to believe in, endorse beliefs that may or may not have been delusional. We don't have an evaluation, so I haven't used the word delusional. But showing symptoms of something that might be a delusional disorder, for example, and nothing was done about it. Counsel, because you are here on plain error review, you've got to be able to show some consequences for all of this. How might he have been able to help in his defense, and what possible defense would he have had? I mean, the Uvisa may feel like long ball, but if he's throwing shade at the jury and confusing the jury, it may be his best shot. Has he got any other argument that he was unable or unwilling to assist that might have gotten him out of this situation? Your Honor, we disagree that on plain error review that we must show that he would have been able to assist in his defense. I just want to know what other arguments do you think on reflection he might have pressed in his defense that he may have been unwilling to do because he was pursuing this Uvisa theory? Well, on a cold record, we don't know. But that is not the standard for plain error review for failure to inquire, to respond to inquire as to competency. It is a due process violation to have someone stand trial when they are not competent to stand trial, regardless of whether the fact that they are competent or not competent affects the outcome of the case. There are certainly points where his, where had he been more aware or tuned into the facts of his case, he might have affected a different outcome. He might have pled guilty earlier and served a shorter sentence, for example, if he did not believe that judges had told him that he should persist because he was in the right. Was he deported subsequent to the conviction and service? To the best of my understanding, yes. He spent some time in immigration custody, continuing to pursue these beliefs, and then it is my understanding that he was removed at some point. Yes. Thank you, counsel. We took you past your time, but we'll give you a minute for rebuttal. Thank you. Mr. Solis. Thank you. May it please the court, Jose Solis for the appellant. This case, in this case, the appellee has failed to meet the burden and this court should sustain and affirm the conviction. In looking at the two issues here, the district court did not plainly error by not ordering competency evaluation or by excluding the defendant for a limited period of time. The court should look at the three things that need to be taken a look at here. One is the medical history. This is the defendant's behavior. Three is the defense counsel's statements about the defendant's competency. There is absolutely no medical history to support this. And there's also, there's four, as the court has pointed out, there was four defense attorneys that talked to him. They didn't raise those. There was two district judges that took a look at this matter. They didn't raise those. There was also a pretrial services report that did not raise that either. And the defendant's behavior was more of a stubbornness and frustration rather than a competency issue. The defendant actually did consult with his defense attorney and did assist him in ensuring that his U visa story came out. Although there was an order from the court not to talk about that, he eventually did get that out. And once he did that, his frustration and his stubbornness as to bring that issue out subsided. Isn't the fact that he went through four different lawyers itself a little bit concerning? I mean, none of them, I totally agree, none of them used the language of competency. Maybe none of them was around with him long enough to really have concerns about competency crystallized. But several of them said, like, we have trouble communicating with him. Isn't that at least suggestive of a potential problem there? Well, while the defendant did go through four defense attorneys, some of the issues that he had with them was whether deciding whether or not he could bring his U visa issue up. And the fact that the court did not allow him to do that and his defense attorneys told him that this was not an immigration court where he could bring that issue up. This was a criminal court where that issue did not matter at this point. He did not believe that. He wanted to get his story out. And the record shows that once he actually did, his issues subsided and he stopped interrupting the court and he actually allowed for testimony to continue and for the proceedings during the court to continue. As it goes to the second issue, the court did not play an error when it excluded him for a short period of time when he was being removed from the courtroom. But before you move on to that, I mean, I think that you said once he was able to talk about the U visa, he was OK. But I think the argument on the other side is that's kind of the whole point, that the U visa thing didn't make any sense. He was fixated on it and not just on the visa per se, but on sort of specific factual claims about things that people had said to him about it that were just not true. So why isn't that significant? That is not significant because it's more of his stubbornness and frustration that he wanted to get his story out. And that's the fact that he believed was his defense in his case. Once he did that, his concerns subsided. He also talked to the judge and said that there was two issues, two sides of the case. He understood that the government would present its first issue and then he would have a chance to present his story after the government was done. That is on the record as well. When we go to the second issue of removing him from the courtroom, it was a short period of time of 30 minutes when the government asked one question in redirect of the agent and introduced one exhibit which had been talked about extensively prior to him being removed from the court. And as he was being removed from the courtroom, he actually changed his mind and told the judge that he would be willing to participate in this court in his trial and wanted to be in the courtroom itself. So therefore, even if there was an error, even if you find there was an error, there's no substantial violation of his rights because he was able to participate and object to anything he wanted to object to on the record with his defense counsel present there. So why is it, I mean, the removal was either justified or not, but for purposes of this question, suppose that it wasn't. Why then does it matter that it was only for one witness and one question? I mean, why is that part of the analysis? Well, the defendant was able to participate in his defense with his defense attorney. But not with respect to the questioning that took place when he was out of the room. The questioning happened as it was in the process of him being removed from the courtroom itself. The 30 minutes started with him interrupting on redirect of the agent of the case with the government's case. And I'm sorry, redirecting the agent. And once he redirected the agent, only one question was asked and one exhibit was introduced into the record, which the defendant had had extensive knowledge of and submitted into the record. Where was the defendant at the time that question was asked and answered? I'm sorry, what was the question? Where was the defendant physically located at the time that question was asked and answered? The defendant was in the process of being removed from the courtroom. That's the part, I've heard that, but I don't understand it. I haven't been in courtrooms. It's not like, okay, we're going to pause and the defendant will be removed and go ahead and keep talking. Is that really what you think happened? Or was there in fact a pause, the removal, and then examination resumed for albeit only one question? Correct. There was a pause. The defendant began to be removed. The defendant actually interrupted the agent's testimony at the time that this was happening. That's when the court made a final warning of the defendant and told him if he did that again, he would be removed. He was then removed and then a question and an exhibit was introduced into the record to which then the defendant then stated, I want to return to the trial and partake, and he was able to do so at that time. So do I understand correctly, at the time that question was actually asked and answered, he was not in the room? That's correct. As a result, the appellee has failed to prove their case today, and we ask that you sustain and affirm the conviction. Thank you. Thank you. Thank you. Just to respond briefly to what my colleague has said, Mr. Moss's issues of communication arose before Judge Zips ruled that the UBISA could not be mentioned in trial. That ruling was at the final pretrial conference. I believe it was the last hearing before trial, and before that, his lawyer had already asked to speak to Judge Zips to express concern that Mr. Moss was endorsing false beliefs about what had happened at prior hearings and was saying that no one had ever shown him a plea agreement, although he had repeatedly been shown a plea agreement and one had been discussed on the record with him. With respect to the issue of the removal, I believe that counsel has conceded that Mr. Moss was out of the room, but I would just add to that that Judge Zips, prior to removing him, asked the interpreter to stop interpreting. Mr. Moss does not speak English, so the moment that there is no interpreter for him, he is effectively excluded from the proceedings because he doesn't understand what's going on. The interruption actually happened when his lawyer said that he had no further questions of the case agent, at which point Mr. Moss said that he attempted to maybe instruct his lawyer to do something, but he said that he wanted the jury to ask for evidence. Thank you, Ms. Johnson. Thank you.
judges: CLIFTON, BYBEE, MILLER